PHILADELPHIA & W. C. TRACTION CO. v. KORDIYAK.

(Circuit Court of Appeals, Third Circuit. May 6, 1909.)

No. 26.

1. APPEAL AND ERROR (§ 1068*) — REVIEW — HARMLESS ERROR—INSTRUCTIONS—ERROR CURED BY VERDICT.

Instructions, in an action for a personal injury, that upon certain findings the jury might award exemplary damages, and that, if they did so, they should return two verdicts, one for compensatory and one for exemplary damages, even if erroneous, were harmless error, where the jury returned but a single verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

2. STREET RAILROADS (§ 118*)—ACTION FOR INJURIES—INSTRUCTIONS.

Instructions given and refused in an action for a personal injury alleged to have been caused to plaintiff by being thrown from a moving street car of defendant by the conductor considered, and the action of the court *held* without error.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258–269; Dec. Dig. § 118.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Wm. I. Schaeffer, for plaintiff in error.

Edward D. Mitchell, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. Frank Kordiyak, the defendant in error, a subject of the Czar of Russia, brought an action of trespass in the Circuit Court of the United States for the Eastern District of

Pennsylvania, against the Philadelphia & West Chester Traction Company, hereinafter referred to as the defendant, for damages for injuries to his person resulting, as alleged, from the negligence of the defendant, and recovered a judgment against it for $2,000. For the reversal of that judgment this writ of error is before us. In the statement of claim it is, among other things, averred in substance that the plaintiff on or about April 4, 1908, became a passenger in a trolley car operated by the defendant on its line from Sixty-Ninth and Market streets, Philadelphia, to Ardmore, Pennsylvania; that the defendant so carelessly, negligently and wrongfully operated the car that the "plaintiff was thrown and ejected from said car and sustained serious and permanent injuries to his body and limbs, by having his left leg amputated, his skull and left arm fractured, and other serious injuries to his body." There was testimony given by the plaintiff to the effect that April 4, 1908, after it had become dark he with three friends together got on a trolley car of the defendant at Manoa Road at a point to the west of and beyond the city limits in order to return to Philadelphia; that the car conductor came to him for his fare "and I went to look in my pocket and I found it had dropped through"; that the conductor spoke to him in English, which he does not understand, and then "took me with the hand and threw me out of the car"; that "I had my hand in the pocket and he came and grabbed hold of me by this arm and took and threw me off, and I couldn't stop myself very well because I still had this hand in my pocket"; that it was his vest pocket with a hole in it through which his money had slipped to the lower portion of his vest; that when he was thrown off the car it was moving fast; that he hit his head against something and does not remember whether any other part of his body was hurt because "my head was hit and I seemed to have lost consciousness"; that "when I started to remember, I started to get up on my hands, and just then something struck me, and then I don't remember any more"; that he had not been drinking that day; that when the conductor asked him for his fare "I didn't say anything, I just looked for the money"; and that while so looking for his money the conductor "stood in front of me for a while, and then he took me by the arm and threw me off the car." There is testimony in behalf of the defendant directly contradictory of that given by the plaintiff. The conductor who is charged by the plaintiff with having thrown him from the car testified to the effect that he did not lay his hands on the plaintiff; that "I didn't do anything to him. I just merely asked him for his fare and left him looking for it"; and that the plaintiff left the car voluntarily and of his own motion. The same conductor testified that the same car while moving westward on its return trip from Sixty-Ninth and Market streets passed the plaintiff at or near Cedar Lane about 8:30 o'clock p. m.; and that the plaintiff at that time was walking on the southerly side of the West Chester pike on the macadamized sidewalk eastwardly toward Sixty-Ninth street. There is also testimony to the effect that the car from which the plaintiff testified he was ejected left Ardmore that night at 3 minutes past 8 o'clock on its eastwardly run; that another car operated by the defendant on the same

road left Ardmore on a similar run at 33 minutes past 8 o'clock; that at 48 minutes past 8 o'clock the later car struck the plaintiff about 250 feet east of State Road; that State Road is about four-fifths of a mile to the east of Montrose Cemetery; and that Cedar Lane is from 1,100 to 1,200 feet east of Montrose Cemetery and from 2,800 to 3,000 feet west of State Road. The motorman of the car which struck the plaintiff testified, among other things, to the effect that he stopped his car at State Road and when he received from the conductor the signal to go ahead, "I started my car on half speed, five points, and I crossed over State Road, I judge near a hundred feet, and I threw my power off, and went a hundred feet further—I judge about two hundred and fifty feet east of State Road—and I saw this man step up on the rail going east towards Sixty-Ninth street terminal, and as soon as I seen the man I blew my whistle and threw my emergency air on and hollered at him, and he paid no attention at all; he didn't make any effort to get off the track or anything else, he just kept on coming east toward Sixty-Ninth street terminal, and I struck him, and I stopped my car and he was laying right at the back step"; that the man who was struck when the witness first saw him "was stepping up crossing the rail—the south rail of the east bound track. * * * He was getting up from the ditch on to the track. He was on the south side of the track. He wasn't on the pike side. * * * He came from the ditch up on to the track." There was also some testimony of the witness Simon to the effect that the plaintiff when seen by those on the car which struck him was "walking with his back to our car. He seemed to be walking slowly, and right after that the car struck him." On the material points of the case the testimony in behalf of the plaintiff and his witnesses was in irreconcilable conflict with the testimony in behalf of the defendant. The jury with all the testimony before it in the exercise of its undoubted function returned a verdict for the plaintiff. It appears from the plaintiff's testimony that in falling from the car from which he states he was ejected he received injury, striking his head and losing consciousness. For this injury, the other elements of liability on the part of the defendant existing, the plaintiff would have been entitled to recover, even if he had not been struck by the later car.

The first assignment of error is to the affirmance of the plaintiff's third point, as follows:

"3. If the jury find from the evidence, that the plaintiff took a seat in the car belonging to the defendant company, and that the employees of the defendant company afterwards ejected him at a dangerous place and while the car was in motion, and that the plaintiff was injured, your verdict must be for the plaintiff."

The proposition presented by the above point must be taken in connection with other portions of the charge and when so taken is not erroneous. The second assignment is based upon the affirmance of the plaintiff's eighth point, as follows:

"8. If the jury find from the evidence that the employé of the defendant company ejected the plaintiff from said car at a dangerous place and while said car was in motion, then in that case they should find for the plaintiff and their verdict should be exemplary, punitive or vindictive damages."

What has been said touching the first assignment is applicable here. The third assignment is based on the affirmance of the plaintiff's ninth point, as follows:

"9. If the jury find from the evidence that the injuries were inflicted in a manner wilfully or with that entire want of care which make the act a reckless and conscious indifference as to the consequence of the act and a reckless and conscious indifference to the rights of others; then you may go beyond the actual damages sustained and give the plaintiff an additional sum in the form of exemplary, punitive or vindictive damages as a punishment to the defendant."

We perceive no substantial error in this proposition when taken in connection with the rest of the charge. The fourth assignment relates to the affirmance of the plaintiff's tenth point, as follows:

"10. In giving exemplary, punitive or vindictive damages there must be two verdicts: (1) Compensatory damages as compensation to the plaintiff for the losses and injuries which he has sustained, and (2) exemplary, punitive or vindictive damages for the reckless, willful and negligent act of the defendant."

On the assumption that the proposition presented by this point is unsound, the error was harmless. In view of the fact that the jury rendered only one verdict it fairly may be inferred that exemplary, punitive or vindictive damages were not allowed. It may be that the jury took the view that the plaintiff, though wrongfully ejected from the car, was not wantonly or maliciously so ejected. The evidence was conflicting on the question whether the car was in motion when the plaintiff was put off. The fifth assignment is based on the affirmance of the plaintiff's eleventh point, as follows:

"11. That the jury may disregard the plaintiff's own testimony as being interested and decide the case on his witnesses' testimony only, and if you come to the conclusion that their testimony is true then your verdict must be for the plaintiff."

We perceive no error in the above instruction. The plaintiff's witness Bilik testified that while the plaintiff was trying to get his money from his pocket "the conductor grabbed him by the left arm and threw him off the car" while it was going "fast." The jurors were at liberty to believe or reject this testimony, and if they believed it, it was their duty to find a verdict for the plaintiff. The sixth and seventh assignments relate to the refusal of the third and fourth points of the defendant which were as follows:

"3. The servants of a street railway company having its tracks at the side of a country road are not bound to anticipate the presence of pedestrians upon its tracks at points where there are no crossings and where there is ample unobstructed roadway in which they might walk in safety, and failing to do so, or to be on the watch for pedestrians at such places is not negligence.

"4. A person who voluntarily walks upon the track of a street railway company at night in the same direction in which the cars are running, at a point where there is ample unobstructed roadway wherein he could walk with perfect safety, is guilty of contributory negligence and cannot recover if he is injured while so doing by a car coming upon him from the rear."

It is well settled that a court in charging a jury is under no obligation, at the request of counsel, to state abstract propositions of law such as those embodied in the defendant's third and fourth points.

But, further, we think, aside from this objection, there was nothing in the case requiring the enunciation of the first of the above propositions even if so modified as to assume a concrete instead of an abstract form; there being nothing in the testimony on either side to suggest negligence on the part of the defendant in its operation of the car which struck the plaintiff. The eighth assignment is based on the refusal of the defendant's fifth point, as follows:

"5. If the jury believe that the plaintiff was injured by being struck by an eastbound car while he was walking or standing upon the defendant's track facing in the same direction in which the cars were going at a point a short distance east of State Road, their verdict must be for the defendant."

The instruction asked was clearly improper; for, as already stated, the other elements of liability on the part of the defendant existing, the plaintiff was entitled to recover for injuries received by him when thrown from the car by the conductor, if he was so thrown, and that was a question for the jury, even if he had not been struck by the later car. In view of this conclusion it is unnecessary to go into an inquiry whether the wrongful act of the defendant through its conductor in throwing the plaintiff from the car, if that were the fact, was the proximate cause of the injuries received by the plaintiff when struck by the later car. If by reason of the injuries received by him when so thrown from the car he became dazed or unconscious or only semi-conscious, and while in that condition, though wandering along or across the defendant's tracks, was struck by the later car, we are not prepared to hold that his ejection from the first car was not the proximate cause of the injuries he received from being struck by the other car. But it is unnecessary to decide and we refrain from further considering this point. The ninth and last assignment is based on the refusal to affirm the defendant's sixth point, as follows:

"6. Under all the evidence the verdict of the jury must be for the defendant."

This assignment, in view of what has already been said, of course, cannot be sustained. On the whole we are satisfied that the judgment below should be affirmed, with costs, and it is so ordered.